IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE CARLOS VELEZ COLON

                    Plaintiff

                    -v-

[1] LEGAL CREDIT SOLUTIONS, INC.
[2] YAHAIRIE TAPIA-CRUZ,
*PRESIDENT AT LEGAL CREDIT
SOLUTIONS, INC.*
[3]*LORRAINE AYBAR;*
[4] JOSE CHICLANA;
[5]MARISEL BRIGNONI,
[6]YESENIA HERNANDEZ;
[7]ARLENE CRUZ;
[8]RAYNIER RIVERA;
[9]ASTRID TAPIA;
[10] CAROLINE TORRES FEBLES;
[11]BRENDA ROLDAN,
[12] ROSAURA DE JESUS;
[13]PEDRO COLLADO,
[14] SANDRA ALCOCER,
[15] DOES 1 – 100, INCLUSIVE
[16] INSURANCE COMPANY XYZ
[17] ATTORNEY DOE.

                    Defendants.

CIVIL NO.:  14-1035 SEC

**COMPLAINT AND DEMAND FOR JURY TRIAL**

TO THE HONORABLE COURT:

Plaintiff, Jose Carlos Velez Colon, on his own behalf, alleges as follows upon

personal knowledge as to himself and his own acts and experiences and, as

1

to all other matters, upon information and belief, based upon, inter alia, investigation conducted by and through his agents:

1. Today the Plaintiff, Jose Carlos Velez Colon, is taking action to halt Legal Credit Solutions, a "credit repair" company that has been preying on financially vulnerable consumers. Consumers struggling to pay off a debt are among the most at risk and deserve better and the Plaintiff will continue to crack down on this type of harmful behavior.

## 2. JURISDICTION AND VENUE

3. This is an action arising under the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b), to obtain monetary civil penalties and injunctive and other relief for Defendants' violations of the Credit Repair Organizations Act, 15 U.S.C. §§ 1679-1679j and Puerto Rico's Unfair Competition Law, 10 L.P.R.A. § 259 et seq.

4. The court has jurisdiction over the matter under 28 U.S.C. § 1331.

5. Venue is proper in the United States District Court for the District of Puerto Rico under 28 U.S.C. §§ 1391(b) - (c).

## DEFENDANTS

6. Defendant **Legal Credit Solutions, Inc.** ("Legal Credit"), is a Puerto Rico corporation with its principal place of business at 1225 VIG TOWER, AVE PONCE DE LEON AB, Santurce, San Juan, Puerto Rico 00907.   Legal Credit, in connection with the matters alleged here, transacts or has transacted business in this district. Defendant Legal Credit is a "credit

repair organization" as that term is defined in the Credit Repair Organizations Act, 15 U.S.C. § 1679(a)(3).

7. Defendant **Legal Financial Group, Inc.** ("Legal Credit"), is a Puerto Rico corporation with its principal place of business at 1225 VIG TOWER, AVE PONCE DE LEON AB, Santurce, San Juan, Puerto Rico 00907. Legal Credit, in connection with the matters alleged here, transacts or has transacted business in this district. Defendant Legal Credit is a "credit repair organization" as that term is defined in the Credit Repair Organizations Act, 15 U.S.C. § 1679(a)(3).

8. Defendant **Yahairie Tapia Cruz** is the Chief Executive Officer of Legal Credit and a shareholder of the company. She supervised, directed, or participated in training Legal Credit's sales consultants. She drafted or approved all training materials for the sales department. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant Yahairie Tapia Cruz, in connection with the matters alleged here, transacts or has transacted business in this district.

9. Defendant **Sandra Alcocer** is the Marketing Manager at Legal Credit Solutions. She supervised, directed, or participated in training Legal Credit's sales or customer service consultants. She drafted or approved all training materials for the sales or customer service department. At all

times material to this Complaint, acting alone or in concert with others, he has formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant Sandra Alcocer, in connection with the matters alleged here, transacts or has transacted business in this district.

10.    Defendant **Pedro Collado** is the Contact Center Director at Legal Credit Solutions. He supervised, directed, or participated in training Legal Credit's sales or customer service consultants. He drafted or approved all training materials for the sales or customer service department. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant Pedro Collado in connection with the matters alleged here, transacts or has transacted business in this district.

11.    Defendant **Rosaura de Jesus** is the Customer Service Manager at Legal Credit Solutions. She supervised, directed, or participated in training Legal Credit's sales or customer service consultants. She drafted or approved all training materials for the sales or customer service department. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint.

4

Defendant Rosaura de Jesus in connection with the matters alleged here, transacts or has transacted business in this district.

12.    Defendant **Brenda Roldan** is the Human Resources Manager at Legal Credit Solutions. She supervised, directed, or participated in training Legal Credit's sales or customer service consultants. She drafted or approved all training materials for the sales or customer service department. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant Brenda Roldan in connection with the matters alleged here, transacts or has transacted business in this district.

13.    Defendant **Caroline Torres Febles** is the Operations Manager at Legal Credit Solutions. She supervised, directed, or participated in training Legal Credit's sales or customer service consultants. She drafted or approved all training materials for the sales or customer service department. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant Caroline Torres in connection with the matters alleged here, transacts or has transacted business in this district.

14.    Defendant **Astrid Tapia** is the Procedures Manager at Legal Credit

Solutions. She supervised, directed, or participated in training Legal Credit's sales or customer service consultants. She drafted or approved all training materials for the sales or customer service department. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant Astrid Tapia in connection with the matters alleged here, transacts or has transacted business in this district.

15.    Defendant **Raynier Rivera** is a *Team Leader* at Legal Credit Solutions. He supervised, directed, or participated in training Legal Credit's sales, customer service consultants, and other employees at the billing and collection division. He drafted or approved all training materials for the sales, collection, billing, or customer service department. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant Raynier Rivera in connection with the matters alleged here, transacts or has transacted business in this district.

16.    Defendant **Arlene Cruz** is the Procedures Supervisor at Legal Credit Solutions. She supervised, directed, or participated in training Legal Credit's sales or customer service consultants. She drafted or approved all

training materials for the sales or customer service department. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant Arlene Cruz in connection with the matters alleged here, transacts or has transacted business in this district.

17.    Defendant **Yesenia Hernandez**, C.P.A., M.B.A. is the Finance Manager at Legal Credit Solutions. She supervised, directed, or participated in training Legal Credit's sales or customer service consultants. She drafted or approved all training materials for the sales, billing, or customer service department. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant Yesenia Hernandez in connection with the matters alleged here, transacts or has transacted business in this district.

18.    Defendant **Marisel Brignoni** works at Legal Credit Solutions. She supervised, directed, or participated in training Legal Credit's sales or customer service consultants. She drafted or approved all training materials for the sales, billing, or customer service department. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, participated in, controlled, or had the

authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant Marisel Brignoni in connection with the matters alleged here, transacts or has transacted business in this district.

19.   Defendant **Jose Chiclana** works at Legal Credit Solutions. She supervised, directed, or participated in training Legal Credit's sales or customer service consultants. She drafted or approved all training materials for the sales, billing, or customer service department. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant Jose Chiclana in connection with the matters alleged here, transacts or has transacted business in this district.

20.   Defendant **Lorraine Aybar** works at Legal Credit Solutions. She supervised, directed, or participated in training Legal Credit's sales or customer service consultants. She drafted or approved all training materials for the sales, billing, or customer service department. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant Lorraine Aybar in connection with the matters alleged here, transacts or has transacted

business in this district.

21.    The above-referenced Defendants formulated or approved Legal Credit's strategy for repairing credit. Defendants drafted or oversaw the drafting of form dispute letters Legal Credit sends to consumer reporting agencies.

22.    Defendants *Does 1-100, inclusive* are unknown officers, agents, or employees at Legal Credit Solutions. They supervised, directed, or participated in training Legal Credit's sales or customer service consultants. They drafted or approved all training materials for the sales or customer service department. At all times material to this Complaint, acting alone or in concert with others, they formulated, directed, participated in, controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant[s] *Defendant Does 1-100,* in connection with the matters alleged here, transacts or has transacted business in this district. Plaintiff will seek leave of Court to amend this Complaint to replace the fictitious name of this Defendant with her true names when they are discovered.

23.    Defendant[s] *Attorney Doe* is an unknown attorney at law and Notary, officer, agent, or employee at Legal Credit Solutions or independent contractor for the company. She or he, at all times material to this Complaint, acting alone or in concert with others, he or she has formulated, directed, promoted, endorsed, encouraged, participated in,

controlled, or had the authority to control, the acts or practices of Legal Credit, including the acts or practices set forth in this Complaint. Defendant *Attorney Doe,* in connection with the matters alleged herein, transacts or has transacted business in this district. Plaintiff will seek leave of Court to amend this Complaint to replace the fictitious name of this Defendant[s] with her true last names when they are discovered.

24. Each of the aforementioned Defendants is responsible in some manner, either by act or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondent superior, breach of contract or otherwise, for the occurrences herein alleged. At all times material hereto and mentioned herein, each of the Defendants sued herein was the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, aider and abettor, assignee and/or alter-ego of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant. At all times herein mentioned, each Defendant was acting in concert or participation with each other, and/or aided and abetted the other Defendants, and/or was a joint participant and collaborator in the acts complained of, and/or was the agent or employee of the others in doing the acts complained of herein, each and all of them acting within the course and scope of said agency and/or employment by the others, each and all of them acting in concert

one with the other and all together. Each Defendant was the co-conspirator, aider and abettor, agent, servant, employee, assignee and/or joint venture of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

## DEFENDANTS' BUSINESS ACTIVITIES

25.    Since 2006, and continuing thereafter, Defendants have operated as a credit repair organization and advertised, marketed, promoted, offered for sale, and sold credit repair services to consumers across the country. Legal Credit Solutions, Inc. (heinafter reffered to as "Legal Credit") advertises its services to consumers through radio (Mega 106.9FM, La Nueva 94FM, Estereotempo, Ritmo 96.5) and TV advertisements and participation in shows such as Despierta America and Tu Manana; as well as Web sites, such as https://www.legal-credit.com/en, and by other means, including, but not limited to, Facebook, tweeter, Instragram, http://www.adpost.com, billboards and pamphlets. Defendants offer a ten-month credit repair program to improve consumer's credit reports.

26.    Defendants also market their credit repair services by seeking referrals or endorsements from public figures (e.g. Jorge Pabon, a.k.a. "El Molusco" and "La Burbu") mortgage brokers, loan brokers, and other loan officers throughout the Nation.

27.    Defendants' representatives communicate with consumers primarily

through telephone calls. Defendants' representatives typically tell consumers that Legal Credit will dispute and remove <u>all</u> negative information or "derogatory information" on consumers' credit reports, including accurate information about the consumers. Defendants' representatives lead consumers to believe that Legal Credit operates within the law, that attorneys' are meaningfully involved in the collection process, and that it is legal for Legal Credit to dispute credit report information that is accurate. Defendants' representatives tell consumers that Legal Credit forces or requires consumer reporting agencies, commonly referred to as "credit bureaus," (Equifax, Experian, TransUnion) to abide by applicable laws. Despite Legal Credit's representation in written documents, in true and in fact Defendants' representatives orally explain to consumers that federal law permits Legal Credit to dispute negative information, regardless of its accuracy, and that credit bureaus must remove the information from consumers' credit reports if they cannot prove it is accurate. For example, Defendants' representatives commonly tell consumers that federal law requires credit bureaus to "prove it or remove it," or words to that effect, and that their computers are "connected" to the credit bureaus. Defendants commonly publish advertisements with the following language or substantially similar language:

> *Do You Have Bad Credit ???*
>
> *Repair your credit with Legal Credit Solutions… Legally, the*

*way that
functions.*

*Only from \*$69.95 during a short period...*

*We work with:*

*Collection accounts
Late payments
Student Loans
Bankruptcy
Reposetions /
Taxes
And more...*

*We are different and unique in the market:*

**Lawyers will attend your case**
*We guarantee our services or money back...
Results in a short period
Financing available with no extra charge
Free and privet consulting
Credit consultancy included
Licensed by the OCIF*

*Call us now!!!! 787-793-4981
Fore more information visit us www.legal-credit.com*

*\* You will be charged an initial fee once, for and credit
reports... Offer for
limited time...*



28.   Defendants' typically tell consumers that Legal Credit is authorized to do business within the Continental United States and that Legal Credit may be reached at 1 (855) 533-0303.



29. Legal Credit claims that their mission is to give consumers "peace of mind" and be the facilitators of their clients "goals, dreams, and opportunities."

30. In telephone conversations with inquiring consumers, Defendants' often represent that Legal Credit can permanently and legally remove all negative items contained on a consumer's credit report, even where the items are accurate and not obsolete.

31. Defendants promise without qualification on the website of the Legal Credit that Legal Credit uses "unique strategies" to improve the consumers' credit.

> We apply unique strategies to improve your credit. Using legal tools to exercise the customer's right to challenge and dispute the validity and completeness of non-accurate, incomplete or adverse information contained in the credit reports, we state the basis for the credit restoration process in a timely and successful manner.

32.   Defendants promise without qualification on the website of the Legal Credit that Legal Credit guarantees 100% of its services.

**Satisfaction Guarantee**

We guarantee 100% of our services. That's how confident we feel about the services we provide. With us you don't have anything to lose but much to gain.

You get the fastest, trustable and most reliable credit restoration process with Legal Credit Solutions.

33.   Defendants promise without qualification on the website of the Legal Credit that Legal Credit uses "legal advisors to assist with the challenging and disputing stage and to provide counseling with bad debts."

Throughout the whole process, we use legal advisors to assist with the challenging and disputing stage and to provide counseling with bad debts.

We dispute all type of adverse accounts:

- Student Loans
- Bad debts
- Charge Off accounts
- Collections
- Identity Theft
- Foreclosures
- Voluntary repossessions
- Inquiries

34.   In numerous instances, Defendants states that Legal Credit typically repairs a consumer's credit report in 90 to 180 days and that "lawyers will attend [the consumers'] case" and that they use "legal technicalities" to remove negative items contained on a consumer's credit report, even where the items are accurate and not obsolete.

35.   In numerous instances, Defendants often lead consumer consumers to

believe that information accurately reported on their credit reports may somehow be considered inaccurate and subject to removal. Even where consumers tell Defendants that credit report entries are accurate, Defendants lead consumers to believe the entries can be removed. Examples of verbal representations made by Defendants that lead consumers to believe that accurate credit report entries may be considered inaccurate and subject to removal include that the information is not "presented accurate" or "technically inaccurate."

36.    Defendants' representatives typically tell consumers that Legal Credit can use "legal technicalities" to eliminate adverse information from the consumers' credit report.

37.    Defendants represents that the dispute process is as follows:



38.    Defendants charge and receive *advance* payments from consumers. Specifically, Defendants charge and receive a "retainer" fee in advance of

full performance of their credit repair services. This fee is characterized by Defendants as an "initial investment" and purportedly covers an "initial processing," "requesting the consumer's free annual credit report," and "others" allegedly for purposes entering in a contract for credit repair services with Legal Credit in the future.

39.   Defendants typically receive their "retainer" or "initial investment" fee before performing any credit repair services. Defendants' retainer fee generally ranges from $89.00 to $149.00. Defendants collect all or as much of the retainer fee as possible before providing any services to consumers. Defendants' representatives often tell consumers that Puerto Rico law allows Legal Credit to charge this "initial investment" fee because Legal Credit is registered and bonded by the OCIF.

40.   Defendants also charge a monthly fee of $89 to $149 for each month that consumers are enrolled in Legal Credit's credit repair program. This fee is automatically deducted from the consumers' bank accounts (or credit cards) through an electronic funds transfer each month regardless if any services are performed by Legal Credit for the consumer that month. Defendants collect these monthly fees before Legal Credit has fully performed its credit repair services. Many other consumers are billed on a monthly basis and are required to pay in cash, check or credit card either by mail, telephone or in-person.

41.   Consumers who agree to enroll in Legal Credit's credit repair program by phone or through their website are sent enrollment documents that

include a contract for services, a purported Power of Attorney form, a Notice of Cancellation form, a copy of an informational document about consumers' credit rights, a Payment Agreement form, and a Client Information form, among others. Defendants' representatives instruct consumers to complete the forms and send them back to Legal Credit by mail, fax or in-person.

42.    Consumers who agree to enroll in a Legal Credit's credit repair program are not provided with the following written statement before any contract or agreement between the consumer and the credit repair organization is executed:

> "Consumer Credit File Rights Under State and Federal Law
> "You have a right to dispute inaccurate information in your credit report by contacting the credit bureau directly. However, neither you nor any 'credit repair' company or credit repair organization has the right to have accurate, current, and verifiable information removed from your credit report. The credit bureau must remove accurate, negative information from your report only if it is over 7 years old. Bankruptcy information can be reported for 10 years.
> "You have a right to obtain a copy of your credit report from a credit bureau. You may be charged a reasonable fee. There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days. The credit bureau must provide someone to help you interpret the information in your credit file. You are entitled to receive a free copy of your credit report if you are unemployed and intend to apply for employment in the next 60 days, if you are a recipient of public welfare assistance, or if you have reason to believe that there is inaccurate information in your credit report due to fraud.
> "You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.
> "You have the right to cancel your contract with any credit repair organization for any reason within 3 business days from the date

you signed it.

"Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur.

"You may, on your own, notify a credit bureau in writing that you dispute the accuracy of information in your credit file. The credit bureau must then reinvestigate and modify or remove inaccurate or incomplete information. The credit bureau may not charge any fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the credit bureau.

"If the credit bureau's reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the credit bureau, to be kept in your file, explaining why you think the record is inaccurate. The credit bureau must include a summary of your statement about disputed information with any report it issues about you.

"The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact:

"The Public Reference Branch "Federal Trade Commission "Washington, D.C. 20580".

43.    Said written statement, 15 U.S.C. § 1679c, is not provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer.

44.    Defendants' contract for services, which is signed by consumers and returned to Legal Credit as part of the enrollment documents, states that consumers retain Legal Credit "to provide Credit Restoration" and that "[t]he time frame for credit restoration shall not exceed six months" and that "it will be automatically renewed afterward."

45.    Defendants perform their credit repair services by sending a series of letters  ("dispute letters") to creditors and consumer reporting agencies. These dispute letters challenge the accuracy of the negative information

appearing on consumers' credit reports.

46.   Defendants' representatives sign consumers' names and use consumers' return addresses in all dispute letters. The dispute letters do not indicate that they were created by Legal Credit and do not mention Legal Credit. The dispute letters appear as though they were sent by consumers. Consumers often do not know the reasons Legal Credit provides for the disputes because Legal Credit does not show or provide consumers with copies of the dispute letters.

47.   Defendants' dispute letters to consumer reporting agencies typically dispute all negative credit information appearing on consumers' credit reports. These dispute letters often list specific reasons for disputing negative items on the credit reports. For example, if a credit report shows that an account was paid late, Defendants claim that it was "never late." If a credit report shows that an account was charged off or placed for collection, Defendants claim that the account was "inaccurate," "not my account," "paid prior to collection," or that the "creditor agreed to remove account." In numerous instances, Defendants make these claims without taking any steps to determine the truthfulness of the specific reasons used for disputing the negative credit information.

48.   In other instances, Defendants continue to send dispute letters containing these claims to consumer reporting agencies even after receiving detailed billing histories verifying the accuracy of the information or signed contracts from the original creditor proving the validity of the

accounts. Defendants typically continue to send these dispute letters on behalf of consumers until the negative credit information is deleted or the consumers have completed Legal Credit credit repair program.

49. Defendants also fail to provide consumers with a separate written statement, prior to the time a consumers signs Legal Credit's consumer contract, that contains specific information on consumer credit file rights under state and federal law.

50. Following the consumers' payment of the advance fee, Defendants do little, if anything, to fulfill the promises made to consumers. Defendants are difficult to contact or, if contacted, are frequently non-responsive or evasive.

51. Consumers who are successful in reaching Defendants are given a variety of excuses why the promised results have not been archived. In cases where the consumer persists, Defendants' become defensive, often arrogant, and more promises are made to the consumer.

52. Consumers' request for refunds are routinely denied by Defendants.

53. In response to consumer complaints, Defendants often reply that Legal Credit has done everything possible to repair and improve the consumer's credit, declare that the consumer has asked Legal Credit to perform illegal activities by seeking to remove accurate and non-obsolete credit report entries, ask the consumer to read the written agreement, and in some cases Defendants avow that Legal Credit is licensed by the OCIF and that will notify all appropriate authorities of the consumer's illegal and

fraudulent actions.

54.    Plaintiff was a victim of Defendants' marketing and sales practices, as described herein. Plaintiff also signed all documents given to him on a "take-it-or-leave-it" basis by Legal Credit. Following the Plaintiff payment of the advance fee, Defendants did little, if anything, to fulfill the promises made to the Plaintiff.

55.    The Credit Repair Organizations Act took effect on April 1, 1997, and has since that date remained in full force and effect.

### COUNT I -  Declarative Relief under CROA
### (On behalf of Plaintiff and the Class)

56.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

57.    CROA provides that Legal Credit, as a credit repair organization, may not "charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. § 1679b(b).

58.    Defendants charged Plaintiff and the Class a first-work fee or "initial investment" fee before or at the time of contracting for credit repair services, irrespective of when it fully performed the agreed upon credit repair services.

59.    Defendant charged Plaintiff and the Class recurring monthly fees after contracting with them for its credit repair services, irrespective of when it

fully performed the agreed upon credit repair services.

60.   Plaintiff and the Class have been harmed by Defendant's misconduct and charging of fees before providing them with full performance of the agreed upon credit repair services. The Class and Defendant have adverse legal interests, and there is a substantial controversy between the Class and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Defendant's billing practices violate 15 U.S.C. § 1679b(b).

61.   Plaintiff, on his own behalf and behalf of the other members of the Class, seeks a judgment under 28 U.S.C. § 2201 declaring that Defendant's billing practices violate 15 U.S.C. § 1679b(b).

## Count II: Violation of CROA, 15 U.S.C. §1679b(b)
### (On behalf of Plaintiff and the Class)

62.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63.   At the outset of service with Defendants, Defendants required Plaintiff and the other members of the Class to submit a valid debit or credit card number for billing purposes.

64.   Defendants' advance fee requirement, is illustrated by the following verbal representation made by Defendants: "Once we get your initial investment and your information, them we will order your [free annual] credit report."

65.   Defendants charged Plaintiff and the other members of the Class an

initial "investment" (presently advertised at *$80.00)* Defendant charged Plaintiff and the Class a first-work fee or "initial investment" fee before or at the time of contracting for credit repair services, or in some cases within approximately five or six days of contracting for credit repair services, irrespective of whether the purchased credit repair services had actually been performed.

66.    Defendants thereafter charged Plaintiff and the other members of the Class recurring monthly fees based on the "credit repair program" chosen at sign-up, irrespective of whether the purchased credit repair services had actually been performed.

67.    By charging Plaintiff and the other members of the Class before fully performing the agreed-upon credit repair services, Defendant violated CROA, 15 U.S.C. § 1 679b(b).

68.    As a result of Defendants' violations of CROA, Plaintiff and other Class members suffered monetary damages.

69.    Plaintiff, on her own behalf and on behalf of the Class, seeks actual damages under 15 U.S.C. § 1679g(a)(1), punitive damages under 15 U.S.C. § 1679g(a)(2)(B), and costs of the action, together with reasonable attorneys' fees under 15 U.S.C. § 1 679g(a)(3).

### Count III: Violation of CROA, 15 U.S.C. §1679c(a)
### (On behalf of Plaintiff and the Class)

70.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

71.   In numerous instances, in connection with the sale and performance of services for consumers by a credit repair organizations, as that term is defined in Section 403(3) of the Credit Repair Organization Act, Defendants have failed to provide with separate written statements containing specific information on the consumer's credit file rights under state and federal law before the contracts or agreements between the consumer and Defendants were executed. Defendants have thereby violation Section 405(a) of the Credit Repair Organization Act. 15 U.S.C. 1679c(a).

### Count IV: Violation of CROA, 15 U.S.C. §1679d(b)(4)
### (On behalf of Plaintiff and the Class)

72.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

73.   In numerous instances, in connection with the sale and performance of services for consumers by a credit repair organizations, as that term is defined in Section 403(3) of the Credit Repair Organization Act, Defendants have failed to provide with separate written statements containing specific statements regarding the consumers' right to cancel the contract without penalty or obligation at any time before the third business day after the on which the consumer signed the contract. Defendants have thereby violation Section 406(b)(4) of the Credit Repair Organization Act. 15 U.S.C. 1679d(4).

### Count V: Violation of CROA, 15 U.S.C. §1679d(b)(2)
### (On behalf of Plaintiff and the Class)

74.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

75.   In numerous instances, in connection with the sale and performance of services for consumers by a credit repair organizations, as that term is defined in Section 403(3) of the Credit Repair Organization Act, Defendants have failed to include on their consumer contract a full and detailed description of the services to be performed for the consumer, including all guarantees of performance and an estimate of the date by which the performance of the services will be completed or the length of period necessary to perform such services. Defendants have thereby violated Section 406(b)(2) of the Credit Repair Organizations Act. 15 U.S.C. 1679d(b)(2).

## Count VI: Violation of CROA, 15 U.S.C. §1679d(b)(4)
### (On behalf of Plaintiff and the Class)

76.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77.   In numerous instances, in connection with the sale and performance of services for consumers by a credit repair organizations, as that term is defined in Section 403(3) of the Credit Repair Organization Act, Defendants have failed to include on their consumer contract a services a conspicuous statement regarding the consumer's right to cancel the contract without penalty or obligation at any time before the midnight of the *third* business day after the date on which the consumer signed the

contract. Defendants have thereby violated Section 406(b)(4) of the Credit

Repair Organizations Act. 15 U.S.C. §1679d(b)(4).

### Count VII: Violation of CROA, 15 U.S.C. §1679e(b)
### (On behalf of Plaintiff and the Class)

78.   Plaintiff incorporates the foregoing allegations as if fully set forth

herein.

79.   In numerous instances, in connection with the sale and performance of

services for consumers by a credit repair organizations, as that term is

defined in Section 403(3) of the Credit Repair Organization Act,

Defendants have failed to provide a "Notice of Cancellation" required by

Section 407(b) of the Credit Repair Organizations Act 15 U.S.C. §

1679e(b), I the form and manner required by that Act, to each consumer

before any contract or agreement between the consumer and Defendants

was executed. Defendants have thereby violated Section 407(b) of the

Credit Repair Organizations Act. 15 U.S.C. §1679e(b).

### Count VIII: Violation of CROA, 15 U.S.C. §1679b(a)(3)
### (On behalf of Plaintiff and the Class)

80.   Plaintiff incorporates the foregoing allegations as if fully set forth

herein.

81.   In numerous instances, in connection with the sale and performance of

services for consumers by a credit repair organizations, as that term is

defined in Section 403(3) of the Credit Repair Organization Act,

Defendants have made untrue or misleading representations to induce

consumers to purchase the credit repair services, including, but not limited

to, the representation that Defendants are able to obtain the permanent removal of derogatory information from consumers' credit reports, including bankruptcies, even where such information is accurate and not obsolete. In true and in fact, Defendants are unable to obtain the permanent removal of derogatory information from consumers' credit report, including bankruptcies, even where such information is accurate and not obsolete. Defendants have thereby violated Section 406(a)(3) of the Credit Repair Organizations Act. 15 U.S.C. §1679b(a)(3).

### Count IX: Violation of CROA, 15 U.S.C. §1679b(a)(3)
### (On behalf of Plaintiff and the Class)

82.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

83.   In numerous instances, in connection with the sale and performance of services for consumers by a credit repair organizations, as that term is defined in Section 403(3) of the Credit Repair Organization Act, Defendants have made untrue or misleading representations to induce consumers to purchase the credit repair services, including, but not limited to, the representation that Defendants attorneys' and "legal advisors" are involved in the consumers' case. In true and in fact, Legal Credit is not a law firm and *Defendant Attorney Dow* does not act as a law firm or as attorney in any meaningful sense of the word because no attorney meaningfully reviews or authorizes any particular dispute letters sent to consumers before it is sent and no attorney provides "legal advice" nor

interacts with the consumers'. The only possible attorney involvement is that someone may review the form of letter sent and define some general parameters as to the intended recipients. Then, the process is delegated to a computer and clerical workers employed by Defendants who use "credit repair software" that automates the creation of dispute letters. See e.g. http://www.disputesuite.com. The only possible public notary involvement is that Defendant *Attorney Doe* shares his signature and seal to create a limited power of attorney using the information provided by Defendants (E.g. Driver's license), notwithstanding that Attorney Doe never saw or interacted with the consumer.

84.    In sum, no appraisal by an attorney at law is made to determine whether the dispute letter should be recommended. However, unbeknown to the consumer, the dispute letter is sent and the consumer is unaware of its content or actual reason for the dispute.

85.    In numerous instances, in connection with the sale and performance of services for consumers by a credit repair organizations, as that term is defined in Section 403(3) of the Credit Repair Organization Act, Defendants have failed to provide with separate written statements containing specific statements regarding the consumers' right to cancel the contract without penalty or obligation at any time before the third business day after the on which the consumer signed the contract. Defendants have thereby violation Section 406(b)(4) of the Credit Repair Organization Act. 15 U.S.C. 1679d(4).

### Count X: Violation of Puerto Rico
### Unfair Competition Law
### (On behalf of Plaintiff and the Class)

86.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

87.    Puerto Rico unfair competition law prohibits any unlawful, unfair or fraudulent business act or practice.

88.    As described herein, Defendants' representations were deceptive and untrue and constitute an unlawful business practice in violation of the Puerto Rico Unfair Competition Law. Defendants' continued utilization of the unlawful and unconscionable marketing practices described herein, and its practice of charging the Class and other consumers' credit cards before completing the agreed upon credit repair services, constitutes an unlawful business practice violation of the Puerto Rico Unfair Competition Law.

89.    By creating and supporting advertising and website content that fails to clearly and conspicuously conform to the Credit Repair Organization Act, as described herein, Defendants engaged in deceptive trade practices in violation of Puerto Rico's Unfair Competition Law, 10 L.P.R.A. § 259 et seq (hereinafter referred to as "UCL")

90.    When Plaintiff and the Class would be charged for Defendant's credit repair services was a material term of the transactions between Plaintiff and the Class on the one hand, and Defendant on the other, because it was likely to affect Plaintiff and the other Class members' choice of, or

conduct regarding, whether to purchase a Defendant's services. Defendant's deception regarding when Plaintiff and the Class would be charged *for* its credit repair services was materially misleading, was and is likely to mislead a reasonable consumer acting reasonably under the circumstances.

91.    Defendant's deception regarding Legal Credit's purported services was and is likely to mislead a reasonable consumer acting reasonably under the circumstances.

92.    Defendant has violated the "unfair" prong of the UCL in that their actions caused substantial injury to consumers, the injury caused by their conduct is not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided.

93.    Defendant has violated the "fraudulent" prong of the UCL in that Defendant's statements in the marketing, sales, and performance of services for consumers by Legal Credit were untruthful. Further, Defendants' statements regarding when consumers would be charged for credit repair service were false and likely to deceive a reasonable consumer. Further, Defendants' statements regarding compliance with the law were false and likely to deceive a reasonable consumer.

94.    Defendant has violated the "unlawful" prong of the UCL in that Defendant's conduct violated the Credit Repair Organizations Act. 15 U.S.C. 1679 et seq.

95.   As a result of Defendants' wrongful conduct in violation of the UCL, Plaintiff and the Class have suffered monetary damages.

96.   Plaintiff, reserves his right to amend the complaint to include class certification allegations (definition of the class, exclusion to the class, numerosity, commonality, typicality, adequate representation, predominance and superiority, policies generally applicable to the class) after hiring adequate representation.

97.   However, Plaintiff incorporates the foregoing allegations as if fully set forth herein, and submits that in determining the amount of any liability of Defendants under 15 U.S.C. 1679g(a)(2) (punitive damages), court shall consider, *among other* relevant factors: 1) the frequency and persistence of noncompliance by the credit repair organization; (2) the nature of the noncompliance; (3) the extent to which such noncompliance was intentional; and (4) the number of consumers adversely affected by Defendants' unfair business practices.

98.   Jury trial is respectfully demanded.

## REMEDIES

**WHEREFORE**, the Plaintiff, respectfully requests that the Court issue an order pursuant to 10 L.P.R.A. § 259 et seq (1) enjoining Defendants from continuing to engage in unfair and unlawful conduct alleged herein; (2) declaratory relief resolving that Legal Credit's contract for services does not comply with the applicable provisions of the Credit Repair Organization Act and that is shall be treated as void and unenforceable; (3) requiring

Defendants to make full restitution of all funds wrongfully obtained by its misconduct alleged herein, 15 U.S.C. 1679g(a)(1)(B); (4) requiring Defendants to pay punitive damages by its misconduct alleged herein, 15 U.S.C. 1679g(a)(2)); (5) treble damages pursuant to 10 L.P.R.A. § 268; (6) interest, attorneys' fees, and reasonable costs under 15 U.S.C. 1679g(a)(1)(B) and 10 L.P.R.A. § 268.

**RESPECTFULLY SUBMITTED.**

HC 1 BOX 6523
GUAYNABO, PR 00971
(787) 599-9003
JCVELEZCOLON@YAHOOC.COM

JOSE CARLOS VELEZ COLON
PRO SE